Name: Marino A. Branes Jr., CA Bar 332195
Address: Branes Law Group, APC
2741 Hamner Ave. Ste 205
Norco, CA 92860
Phone: (562) 294-1284
Fax: (562) 274-0466
Email Address: marino@braneslaw.com

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| CHINH TRIEU DANG,<br><br>Petitioner,<br><br>vs.<br><br>MARKWAYNE MULLIN et al;<br><br>Respondents. | Case No.: 5:26-cv-5202<br><br>Agency Case No: A 025-148-017<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

Petitioner, Chinh Trieu Dang, through undersigned counsel, respectfully petitions this Court for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and alleges as follows:

## I. INTRODUCTION

1. Petitioner, Chinh Trieu Dang respectfully challenges renewed post-final-order detention after approximately fifteen years of supervised liberty. ICE generated a notice for a July 28, 2026 “ATD ENROLLMENT” appointment, but Petitioner recalls receiving it only after the stated appointment date. *See*

Exhibits J, K and L. He nevertheless reported shortly thereafter and ICE detained him, apparently on July 31, 2026. This action challenges custody and the process used to revoke release; it does not seek district-court review of the removal order.

2. The record now available identifies Petitioner as stateless, born in Hong Kong on December 20, 1979. *See* Exhibit A. DHS admitted him at Los Angeles on March 2, 1981 as a stateless refugee and adjusted him to lawful permanent resident status on July 1, 1982. *See* Exhibit B and H.

3. On or about June 3, 2003, in the United States District Court for the District of Wyoming, Petitioner was convicted of conspiracy to possess with intent to distribute and to distribute more than 500 grams of methamphetamine, under 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and sentenced to approximately 120 months. *See* Exhibit G. He identifies this as his only conviction and reports no arrests or convictions since release. *See* Exhibit D. This pleading does not minimize the conviction; it contends that it does not eliminate statutory and constitutional limits on civil detention.

4. An immigration judge ordered Petitioner removed on August 9, 2011. The available record reports no BIA appeal. *See* Exhibit F. Petitioner states that he was unrepresented, appeared by video, did not understand beforehand that he would be appearing before an immigration judge, and does not recall an

explanation or waiver of appeal rights or any designated country. His limited memory may be affected by a head injury sustained while federally incarcerated. *See* Exhibit D. Accordingly, further evaluation of the prior removal proceedings necessarily depends on the pending FOIA requests seeking additional records concerning Petitioner's immigration history and those proceedings. Because agency processing may take several months, the complete administrative record is not yet available to Petitioner or counsel. *See* Exhibit E.

5. ICE detained Petitioner after the final order from approximately August 25 through November 22, 2011, for approximately 89 days, and then released him pending removal under supervision. *See* Exhibit J. Petitioner recalls being instructed to report to immigration authorities. *See* Exhibit D. Petitioner's wife, Victoria Dang ("Victoria"), recalls prior statements suggesting unsuccessful removal efforts involving Hong Kong or Vietnam, but Petitioner does not recall any such efforts.

6. Petitioner remained in the community for approximately fifteen years. He reports that he complied with approximately annual ICE reporting, including later reception-window and self-service-kiosk check-ins with fingerprint submission, and had no new arrests or convictions. *See* Exhibit D.

7. When Petitioner reported to ICE after receiving the July 2026 notice, he was accompanied by his wife, Victoria, who remained outside because she was not permitted to enter the ICE offices. *See* Exhibit D. ICE detained him for deportation based generally on the prior order, identified no new violation, did not enroll him in ATD, and confiscated his Form I-220B, employment authorization card, and identification. *Id.*

8. Petitioner remains at the Adelanto ICE Processing Center, approximately one hour from the family home in Corona. Victoria visits approximately weekly and he speaks with his wife and children daily. *Id.* A transfer outside Southern California would severely impair family contact, access to records, and Petitioner's participation in this litigation and the derivative-citizenship investigation.

9. If ICE custody began July 31, the present period is approximately 42 days as of September 11, 2026; combined with about 89 documented days in 2011, cumulative post-order detention is approximately 131 days. The six-month *Zadvydas* presumption has not yet been reached.

10. DHS's 2011 Form I-213 described Petitioner as "stateless" and a national of Hong Kong. *See* Exhibit G. Petitioner possesses a Hong Kong birth certificate but states that he does not recall ever having a Vietnamese, Hong Kong,

Chinese, or other passport establishing nationality. *See* Exhibits A and D. Counsel has not been provided documentation showing that a country has accepted Petitioner for removal, issued a current travel document, or that a removal flight has been scheduled. *See* Exhibit E. Victoria has heard references to Vietnam and Hong Kong, but the sources and context remain unclear.

11. Additionally, Form I-213 reports that Petitioner said he did not fear return to Hong Kong. *See* Exhibit G and H. He currently identifies generalized concerns about unfamiliar countries, harsh treatment related to his conviction, and reports of removals to different countries, but has not yet identified specific past persecution, a protected ground, government involvement, or a particularized torture risk. *See* Exhibits D and E. Any protection claim must be developed country by country and must candidly address the 2011 statement.

12. Petitioner reports refusing two interviews after detention because of fear and confusion surrounding possible removal. Counsel was subsequently advised by the Deportation Officer that ICE attempted to interview Petitioner on August 5 and August 10, 2026, in connection with completing a travel-document request application for Vietnam. *See* Exhibit E. The present record does not establish whether those interviews also constituted regulatory revocation interviews, post-order custody reviews, reasonable-fear screenings, or another form of

immigration interview; whether counsel or clarification was requested; or what notice, rights, or warnings were provided.

13. Petitioner's father naturalized on December 9, 1994, before Petitioner turned eighteen; his mother naturalized in 2005. *See* Exhibit G. Petitioner recalls living with both parents before he turned eighteen. These facts require investigation under former INA § 321, including whether a legal separation and the father's legal custody existed before December 20, 1997. Petitioner does not ask this Court to adjudicate citizenship in this custody action.

14. Petitioner is married to Victoria Dang, a United States citizen by birth since May 29, 2019. *See* Exhibit C. They have two children, Luna Yvonne Dang, who is ten years old and Miles Arthur Dang, who is five years old. *See* Exhibit N and O. Their young son has autism, he receives extensive in-home behavioral therapy, and reportedly relies heavily on Petitioner, who stopped working to become one of his caregivers. *See* Exhibit D and P. Their school-aged daughter has asthma and is emotionally affected by the detention. *See* Exhibit D. The son's distress and behavioral outbursts reportedly increased after Petitioner was detained. *Id.*

15. Petitioner reports hypertension, hyperlipidemia, substantial hearing loss, chest pain and shortness of breath in detention, two EKGs without an adequate

explanation of results, blood and stool testing, and a medical grievance seeking information. *See* Exhibit D. On September 2 he reportedly learned that he had hepatitis A and was prescribed Metformin. *See* Exhibit Q. Whether he has diabetes or prediabetes, the date and source of any hepatitis A infection, and the adequacy of care require medical records and prompt physician evaluation.

## II. JURISDICTION AND VENUE

16. This Court has jurisdiction under 28 U.S.C. §§ 2241 and 1331 over a challenge to present physical custody allegedly contrary to the Constitution and federal law. The Court may grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and equitable habeas authority. The APA, 5 U.S.C. §§ 702 and 706, is pleaded in the alternative for non-monetary review of the completed revocation decision.

17. Petitioner challenges detention and revocation procedures, not the validity or execution of the removal order. The jurisdiction-channeling provisions of 8 U.S.C. § 1252 therefore do not foreclose core habeas review of physical custody.

18. Venue lies in the Central District of California, Eastern Division, because the present record places Petitioner at the Adelanto ICE Processing Center in San

Bernardino County. The immediate custodian is the facility warden. *See Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024).

## III. PARTIES

19. Petitioner Chinh Trieu Dang is A 025-148-017 and is presently confined at the Adelanto ICE Processing Center.

20. Respondent, Warden of the Adelanto Ice Processing Center is Petitioner's immediate custodian and is sued in an official capacity.

21. Respondents MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; and TODD BLANCHE, Attorney General of the United States and THOMAS GILES, Field Office Director, U.S. Immigration and Customs Enforcement, Los Angeles Field Office are sued in their official capacities for prospective relief. Successors are automatically substituted under Federal Rule of Civil Procedure 25(d).

## IV. LEGAL FRAMEWORK

22. Because the removal order is administratively final, 8 U.S.C. § 1231 governs detention. *Johnson v. Guzman Chavez*, 594 U.S. 523, 533, 539–40 (2021). After the removal period, § 1231(a)(6) permits discretionary detention only within constitutional limits.

23. *Zadvydas v. Davis* construes § 1231(a)(6) not to authorize detention when removal is not significantly likely in the reasonably foreseeable future and recognizes a six-month presumptive period. 533 U.S. 678, 699–701 (2001). *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022), rejects a statutory entitlement to periodic bond hearings, but does not overrule *Zadvydas* or resolve distinct due-process and regulatory claims.

24. Revocation regulations require notice and an informal interview and tie renewed detention to specified changed circumstances, including a significant likelihood of removal in the reasonably foreseeable future. 8 C.F.R. §§ 241.4(l), 241.13(g).

25. The Fifth Amendment protects against arbitrary re-incarceration after the Government has authorized community liberty. *See Morrissey v. Brewer*, 408 U.S. 471, 482–84 (1972); *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Amezcuita Diaz v. Albarran*, No. 3:25-cv-09837-JSC, Dkt. 31 (N.D. Cal. Aug. 25, 2026), applies that reasoning to a surprise immigration arrest, though it arose under § 1226(a) and does not establish a § 1231 bond-hearing right.

## V. COUNT I- PROCEDURAL DUE PROCESS AND UNLAWFUL REVOCATION

26. Petitioner incorporates the preceding allegations.

27. After approximately fifteen years of supervised liberty and compliance, Petitioner had a substantial interest in avoiding erroneous re-incarceration. The ATD notice was allegedly delivered only after its stated appointment date; Petitioner nevertheless reported shortly thereafter and was detained without any identified new criminal offense or supervision violation.

28. The risk of error is substantial because statelessness, a potentially dispositive derivative-citizenship inquiry, receiving-country acceptance, travel-document status, supervision compliance, danger, flight risk, medical needs, caregiving responsibilities, and less restrictive conditions require individualized assessment. Petitioner's refusal of two intake interviews must be evaluated on a complete record and does not itself establish compliance with revocation procedures.

29. Revocation and continued custody without constitutionally adequate and regulation-compliant process violate the Fifth Amendment and 8 C.F.R. §§ 241.4(l) and 241.13(g).

## VI. COUNT II- ADMINISTRATIVE PROCEDURE ACT (IN THE ALTERNATIVE)

30. Petitioner incorporates the preceding allegations.

31. The completed revocation decision changed Petitioner's status from supervised liberty to custody and constitutes final agency action to the extent habeas does not supply complete relief. No adequate alternative remedy provides timely review of the present deprivation.

32. If Respondents revoked release without required procedures, individualized changed-circumstances findings, consideration of conditions, or a rational connection between record and decision, the action is arbitrary, capricious, contrary to law, in excess of authority, and without observance of procedure. 5 U.S.C. § 706(2)(A), (C), (D).

## VII. COUNT III - § 1231(a)(6) / ZADVYDAS (PRESERVED)

33. Petitioner incorporates the preceding allegations.

34. The documented cumulative detention is approximately 131 days as of September 11 if the current detention began July 31, below the six-month presumption. Petitioner preserves the claim because DHS records statelessness, prior release followed unsuccessful or incomplete removal efforts, and no current receiving-country acceptance has been disclosed. The claim should be renewed or supplemented if detention approaches six cumulative months without individualized proof that removal is significantly likely in the reasonably foreseeable future.

35. If Respondents contend removal is imminent, they should produce individualized evidence: the proposed destination, legal basis, date and contents of travel-document requests, issuing authority's response, validity and acceptance of any document, and concrete flight arrangements. General removal statistics do not answer whether a country will accept this Petitioner.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Petitioner requests that the Court:

- Issue an order to show cause and require Respondents promptly to lodge the revocation and custody record;
- Declare the revocation unlawful and order release under appropriate supervision, or alternatively require a prompt constitutionally adequate, individualized custody determination before a neutral decisionmaker with written reasons and meaningful consideration of conditions;
- Require disclosure of the asserted changed circumstances and individualized evidence concerning destination, travel documents, acceptance, and anticipated removal;
- Require prompt production of detention medical records, physician evaluation of reported chest pain, breathing difficulty, hepatitis A, glycemic status,

hypertension and hyperlipidemia, continuity of medication, and reasonable communication accommodations for hearing loss;

- Enjoin transfer outside this District without reasonable advance notice sufficient to preserve jurisdiction and counsel access;
- If a destination-specific claim becomes ripe, require constitutionally adequate written notice and a meaningful opportunity to pursue available protection before removal;
- Retain jurisdiction to enforce interim and final relief and to consider renewed *Zadvydas* relief if promised removal does not occur or cumulative detention reaches the presumptive period;
- Award fees and costs as authorized by law; and grant further just relief.

Respectfully submitted on this day September 11, 2026

/s/Marino A. Branes, Jr., Esquire
California Bar # 332195
Branes Law Group, APC
2741 Hamner Ave. Ste 205
Norco, CA 92860
Phone Number: 562-294-1284
Fax Number: 562-274-0466
Email Address: marino@braneslaw.com

Attorney for the Petitioner